1

2                                              THE HONORABLE ROBERT S. LASNIK

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**
                  **FOR THE WESTERN DISTRICT OF WASHINGTON**
9                                    **AT SEATTLE**

10

11   JAMES STEWART, SUE PEARCE, JOSEPH
     VIZZARD, WILIE JONES, TOLAN
     FURUSHO and KEITH ROBERTSON,              Civil Action No. CV4-2130L
12   derivatively on behalf of Goldtech Mining
     Corporation, a Nevada corporation,        **MOTION FOR LEAVE TO AMEND**
13                                             **COMPLAINT**
                               Plaintiffs,
14                                             **NOTE FOR MOTION CALENDAR:**
           vs.                                 **JULY 15, 2005**
15

16   TRACY KROEKER, RALPH JORDAN, JACK
     LASKIN, NANCY EGAN, RICHARD SMITH
17   and SERGE BOURGOIN,

18                             Defendants.

19

20                                  **I. MOTION**

21
           COMES NOW the Plaintiffs, by and through their attorney of record, Thomas E. Puzzo,
22
     and petitions the Court for leave to amend their complaint.  Plaintiffs Stewart, Pearce, Vizzard,
23
     Jones, Furusho and Robertson (referred to herein collectively as the "Plaintiffs") have become
24
     aware of additional malfeasance and breaches of fiduciary duty on the part of Defendants
25
     Kroeker, Jordan, Laskin and Egan (referred to herein collectively as the "Defendants" or
26

MOTION FOR LEAVE TO AMEND COMPLAINT - 1 -                The Otto Law Group, PLLC
CIVIL CASE NO. CV4-2130L                                 900 Fourth Avenue, Suite 3140
                                                         Seattle, Washington 98164
                                                         (206) 262-9545

"Defendant-Directors") which occurred after the Verified Stockholders Derivative Complaint (the "Complaint") was filed.  Pursuant to Federal Rules 15 (d) and 16 (b), Plaintiffs do hereby petition the Court for leave to amend the complaint to bring additional claims against the Defendant-Directors, as these claims had not yet occurred at the time of filing.

## II.    FACTUAL BACKGROUND

On May 3, 2005, Goldtech Mining Corporation, a Neveda corporation ("Goldtech"), filed with the Securities and Exchange Commission (the "SEC") an annual report on Form 10-KSB (the "10-KSB").  See *Declaration of Thomas E. Puzzo in Support of Plaintiffs' Motion for Leave to Amend Complaint* ("Puzzo Dec."), Exhibit A, p. 6-50  In the 10-KSB, Goldtech disclosed that in October 15, 2004, Defendant Tracy Kroeker ("Kroeker") was issued 2,200,000 shares of Goldtech common stock. *Puzzo Dec.,* Exhibit A, p.18.  Further, on October 15, 2004, Goldtech disclosed that "a former subsidiary" of Goldtech, Envyr Corporation, a Deleware corporation ("Envyr"), was issued 1,000,000 shares of Goldtech common stock. *Id.* at 44.  However, Tolan Furusho ("Furusho"), a duly elected and incumbent director of Goldtech never received notice of the meeting, never waived his right to notice nor did he ever attend a meeting where such issuances were voted on and approved *See Declaration of Tolan Furusho in Support of Plaintiffs' Motion for Leave to Amend Complaint* ("Furusho Dec.") ¶2 - 4.

On May 3, 2005, Goldtech further disclosed in the 10-KSB that its subsidiary, Envyr, was sold to Daniel J. Prins ("Prins"), an affiliate of Ralph Jordan ("Jordan"). *See Puzzo Dec.* Exhibit A, p. 19.  The Envyr Agreement, executed October 1, 2004, provides that the Goldtech shall sell, transfer and deliver all of the issued and outstanding capital stock of Envyr to the buyer, Daniel J. Prins, for the sum of "$1 in hand." *See Puzzo Dec*. Exhibit B, p. 52.  In addition to the sale of Envyr for "$1 in hand", Goldtech purportedly issued Envyr, 1,000,000 shares of Goldtech

MOTION FOR LEAVE TO AMEND COMPLAINT - 2 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

common stock on October 15, 2004.  Again, Furusho, a director of Goldtech, never received notice of the meeting, never waived his right to notice nor did he ever attend a meeting where such issuances or actions were voted on and approved. *See Furusho Dec.* at ¶5.

On or about May 6, 2004, pursuant to a subpoena for documents to OTC Stock Transfer ("OTC"), Plaintiffs received Legal Ledger Detail Reports from OTC which documents an issuance on January 24, 2005 of 2,000,000 shares of common stock to 1132284 Alberta Ltd., an Alberta, corporation and an affiliate of Kroeker. *See Puzzo Dec.* Exhibit C, p. 68.  Furusho, a director of Goldtech, never received notice of the meeting, never waived his right to notice nor did he ever attend a meeting where the issuance of 2,000,000 shares of Goldtech common stock to 1132284 Alberta Corporation was voted on and approved. *See Furusho Dec,* at ¶6.

The Legal Ledger Detail Reports from OTC also documents the cancellation of 5,633,000 shares of Goldtech common stock.  *See Puzzo Dec.,* Exhibit D, p. 70-71.   The Legal Ledger Detail Reports from OTC also show a contemporaneous issuance to Kroeker for 5,633,000 shares of Goldtech common stock. *See Puzzo Dec.,* Exhibit E, p. 73.   Furusho, a director of Goldtech, never received notice of any meeting, never waived his right to notice nor did he ever attend a meeting where the cancellation of the 5,633,000 shares of common stock and the concurrent issuance of the exact same number of shares to Kroeker were voted on and approved. *Furusho Dec.,* at ¶7, 8.

On or about May 24, 2005, Plaintiffs became aware of a Schedule 13D (the "Envyr 13D") and Schedule 13D/A (the "Envyr 13D/A") statement of beneficial ownership filed with the SEC regarding shares issued by Goldtech to Envyr.  In the Envyr 13D/A, Ralph Jordan ("Jordan") was listed as the recipient of notice and communication and further signed the Envyr 13D/A. *See*

MOTION FOR LEAVE TO AMEND COMPLAINT - 3 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

*Puzzo Dec.,* Exhibit F, p. 78.  Further, Item 3 of both the Schedule 13D and Schedule 13D/A denote that no consideration was paid for the 1,000,000 shares issued to Envyr.  *Id.* at p. 76, 79.

On or about May 25, 2005, Plaintiffs received documents produced by Defendants pursuant to discovery and received Board resolutions substantiating the malfeasance and breach of duty by the Defendant-Directors.  In accordance with, Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their counsel of record, sent a letter dated June 6, 2005 to Goldtech demanding that remedial action be taken on the following six things: 1) the issuance of 1,000,000 shares to Envyr Corporation; 2) the issuance of 2,200,000 shares to Tracy Kroeker; 3) the issuance of 5,633,000 shares to Tracy Kroeker; 4) the issuance of 2,000,000 shares to 1132284 Alberta Corp.; 5) the sale of all shares of Envyr Corporation to Daniel Prins for $1.00 in hand; and 6)  an update as to the ownership of the mining properties in Canada referred to collectively as "the B.C. properties."  *See Puzzo Dec.,* Exhibit G, p. 82-83.

On June 22, 2005, Goldtech filed a Current Report on Form 8-K disclosing that Goldtech cancelled 11,541,400 shares of the Goldtech's common stock without valid board approval. *See Puzzo Dec.,* Exhibit H, p. 87.   Furusho, a director of Goldtech, never received notice of the meeting, never waived his right to notice nor did he ever attend a meeting where the cancellation of the 11,541,400 shares of Goldtech common stock was voted on and approved. *See Furusho Dec.*, at ¶9.

Plaintiffs have also discovered that Goldtech, under the direction of Kroeker, has been acting as stock transfer agent to Goldtech. Plaintiffs believe that neither Goldtech nor Kroeker are registered transfer agents as required by Section 17A(c) of the Securities Exchange Act of 1934, as amended.  Plaintiffs have not attempted to contact Goldtech regarding its cancellation of 11,541,400 or the appointment of Goldtech/Kroeker as stock transfer agent, however, in light of

MOTION FOR LEAVE TO AMEND COMPLAINT - 4 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

the fact that over three weeks have elapsed since Plaintiffs' letter demanding remedial action was sent to Goldtech and no response has been forthcoming, Plaintiffs feels that demanding reissuance of the 11,541,400 shares of Goldtech common stock or the appointment of a registered stock transfer agent would be futile.

### III.   POINTS AND AUTHORITY

Pursuant to the Pretrial Scheduling Order issued by the court (the "Scheduling Order"), the Deadline for amending pleadings expired on May 11, 2005.  In deciding a motion for leave to amend a complaint pursuant to Federal Rules, the Court has broad discretion to manage the pretrial phase of litigation.  "The District Court is given broad discretion in supervising the pretrial phase of litigation, and its order ... will not be disturbed unless there is evidence of a clear abuse of discretion." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985).

### A.  Standard Governing Modification Of Pretrial Scheduling Orders.

The Federal Rules allow for the amendment of a complaint after the deadline for amending such pleadings has passed, in certain situations.  Rule 16(b) provides that the "scheduling order shall not be modified except by leave of the court and upon a showing of good cause." Fed. R. Civ. Pro. 16(b) (2005).

Good cause is a fact determined by the court and based on a showing of diligence by the moving party.  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Due to the late filing of the Goldtech 10-KSB[1], review of the document and knowledge

---

[1] SEC Rule 15d-1, promulgated pursuant to the Securities Exchange Act of 1934, as amended, states in relevant part "Annual reports shall be filed within the period specified in the appropriate report form. General Instruction A to SEC Form 10-KSB, the report form which Goldtech uses to file its annual reports, states in relevant part, "Annual reports on this from shall be filed within 90 days after the end of the fiscal year covered by the report." Accordingly, because Goldtech has a fiscal year end of December 31 (as it disclosed in its most recent 10-KSB filed

MOTION FOR LEAVE TO AMEND COMPLAINT - 5 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

of the actions in dispute was not discoverable until after the complaint had already been filed

with the Court. *See Puzzo Dec.* Exhibit A, p. 50. Further, additional malfeasance and discovery

documents evidencing additional breaches of duty and bad faith were received subsequent to the

cutoff date for amending the complaint, justifying Plaintiff's supplemental pleading.

### B. Plaintiffs Have Good Cause To Modify The Scheduling Order.

A party can demonstrate good cause for the modification of a scheduling order by

showing that, even with the exercise of due diligence, the party was unable to meet the timetable

set forth in the scheduling order. *See Zikovic v. Southern California Edison Co.*, 302 F.3d 1080,

1087 (9th Cir. 2002); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

Plaintiffs have become aware of additional malfeasance and breaches of fiduciary duty on the

part of defendants which occurred after the complaint was filed. However, the additional actions

in dispute did not come to Plaintiffs' attention until after the complaint had been filed and only

several days prior to the deadline for amending pleadings. As such, even though plaintiffs were

diligent, plaintiff's ability to conduct the necessary investigation and prepare the appropriate

documents for filing with the Court was barred by the expiration of the deadline.

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the

party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s

'good cause' standard primarily considers the diligence of the party seeking the amendment."

*Johnson v.* inquiry is upon the moving party's reasons for seeking *Mammoth Recreations, Inc.*,

975 F.2d 604, 609 (9th Cir. 1992). Plaintiffs have been steady, earnest, and put forth an energetic

effort in investigating defendants and their actions. Had Goldtech's 10-KSB filing been filed in

---

with the SEC on May 3, 2005), Goldtech's 10-KSB for the fiscal year ended December 31, 2005 would have been
required to be filed no later than March 31, 2005 (which is 90 days after December 31, 2004).

MOTION FOR LEAVE TO AMEND COMPLAINT - 6 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

a timely manner Plaintiffs would have added the causes of action prior to the expiration of the deadline for amending pleadings, but defendants prevented this by filing of the Goldtech 10-KSB on May 3, 2005.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *Gestner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985).  Defendant's actions, as described in Goldtech's most recent 10-KSB, identify continued egregious activity by Defendants and should be adjudicated along with all their previously identified unauthorized activities as a pattern of illegal activity. *See Puzzo Dec.,* Exhibit A, p. 6-50

Plaintiffs were further required under Federal Rule 23.1 to make a demand of Goldtech to take remedial action before adding new claims to its existing complaint.  Fed. R. Civ. P. 23.1 states that "the complaint in a shareholder derivative action shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ P. 23.1 (2005).  Plaintiffs, on June 6, 2005, made a demand on Goldtech for remedial action with regard to the newly discovered malfeasance and additional breaches of fiduciary duty.   Goldtech as of the date of this motion has yet to respond, deny or take remedial action on any of the allegations raised by the Plaintiffs. *See Puzzo Dec.,* Exhibit G, p.82-83.  As a result, Plaintiff seeks leave of the court to amend the complaint to include the additional breaches of duty and malfeasance of the Defendant-Directors listed below despite the passing of the May 11, 2005 deadline denoted in the pre-trial order.

### 1.    Sale of Envyr to Daniel Prins

MOTION FOR LEAVE TO AMEND COMPLAINT - 7 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

1    On May 3, 2005, Goldtech disclosed for the first time in its 10-KSB, that pursuant to a

2   Sales Agreement dated October 1, 2004, Goldtech sold "all of the issued and outstanding shares

3   of capital stock" of Envyr, the only revenue generating asset of Goldtech, to Daniel Prins, an

4   affiliate of Jordan, *for consideration of One Dollar ($1.00)* (the "Envyr Sale"). *See* Puzzo Dec.

5   Exhibit B, p. 52, §1.2.  Under Nevada Law, "[e]very corporation may, by action taken at any

6   meeting of its board of directors, sell, lease or exchange all of its property and assets, including

7   its good will and its corporate franchises, upon such terms and conditions as its board of

8   directors may deem expedient and for *the best interests of the corporation*, when and as

9   authorized by the affirmative vote of stockholders holding stock in the corporation entitling them

10   to exercise at least a majority of the voting power given at a stockholders' meeting called for that

11   purpose..." Nev. Rev. Stat. 78.565 (2005) (emphasis added).  Under the Bylaws of Goldtech,

12   Article 5, section 5.5, "[t]he person calling a special meeting of the Board shall give written

13   notice to each director of the time, place, date and purpose of the meeting not less than three

14   business days if by mail and not less than 24 hours if by telegraph or in person before the date of

15   the meeting." *See Puzzo Dec*, Exhibit I, p. 96.  Additionally, under the Bylaws of Goldtech, the

16   Board shall "give notice of each meeting of [s]tockholders, whether annual, or special, not less

17   than 10 nor more than 50 days before the date of the meeting." *See Puzzo Dec*, Exhibit I, p. 91.

18    The sale of Envyr is an invalid transfer of assets because Tolan Furusho ("Furusho"), a

19   duly appointed and incumbent director of Goldtech, never (i) received any notice of a special or

20   annual meeting of the Board of Directors of Goldtech to vote upon or otherwise approve the

21   Envyr Sale, or (ii) provided any written (or other) consent in lieu of any meeting of the Board of

22   Directors of Goldtech approving the Envyr Sale as required by NRS 78.565. *See Furusho Dec.*,

23   ¶5. Further, Goldtech never called a stockholders' meeting, received the approval of the

24   shareholders or sought unanimous consent from the stockholders of Goldtech to approve the

25   Envyr Sale as required by Nevada State Law.  Additionally, the transaction was not in the best

26   interests of the corporation as evidenced in the invalid board resolution, passed by the Defendant

MOTION FOR LEAVE TO AMEND COMPLAINT - 8 -
CIVIL CASE NO. CV4-2130L

1  Directors, but rather in the interests of "the customers of Envyr." See *Puzzo Dec.,* Exhibit K, p.

2  108.

3  SEC Form 8-K, Item 2.01, (entitled "Completion of Acquisition or Disposition of

4  Assets") requires the disclosure of, among other things, the amount or consideration given or

5  received for the assets, and the identity of the person(s) to whom such assets were sold and the

6  nature of any material relationship, between such persons and the registrant or any of its affiliates

7  within four (4) days of the event.[2] Contrary to disclosure requirements required by Form 8-K,

8  Goldtech never disclosed the Envyr Sale until 7 months later when it filed the May 3, 2005 10-

9  KSB.  Had Goldtech timely disclosed the Envyr sale, as required by Form 8-K, Plaintiffs would

10 have been aware of the unauthorized sale as early as October 5, 2004

11 **2.      The issuance of 1,000,000 shares of common stock to Envyr**

12 On September 21, 2004, only nine days prior to the Envyr Sale, Goldtech issued

13 1,000,000 shares of common stock to Envyr, and Envyr paid no consideration for such 1,000,000

14 shares as evidenced in Item 3 of the Schedule 13D/A filed by Envyr on May 24, 2005.  *See*

15 *Puzzo Dec.,* Exhibit F, p. 79.  The issuance of the 1,000,000 shares to Envyr is in violation of the

16 Nev. Rev. Stat., 78.211 (1), which requires that "[t]he board of directors may authorize shares to

17 be issued *for consideration* consisting of any tangible or intangible property or benefit to the

18 corporation, including, but not limited to, cash, promissory notes, services performed, contracts

19 for services to be performed or other securities of the corporation."  Nev. Rev. Stat. 78.211 (1)

20 (2005).

21 The 1,000,000 shares were never duly authorized nor validly issued because Furusho, a

22 duly appointed and incumbent director of Goldtech, never (i) received any notice of a special or

23 _____

24 [2] SEC Rule 15d-11(a), promulgated pursuant to the Securities Exchange Act of 1934, as amended, states in relevant
part "every registrant . . . shall file a current report on Form 8-K within the period in that form . . . .  General

25 Instruction B.1 to SEC Form 8-K states in relevant part, "Unless otherwise specified, a report is to be filed or
furnished within four business days after occurrence of the event."   Accordingly, because Form 8-K does not

26 provide otherwise, Goldtech would have to have disclose any sale of assets, any sales of unregistered securities and
any changes in control of Goldtech within four days of the occurrence.

MOTION FOR LEAVE TO AMEND COMPLAINT - 9 -                        The Otto Law Group, PLLC
CIVIL CASE NO. CV4-2130L                                         900 Fourth Avenue, Suite 3140
                                                                Seattle, Washington 98164
                                                                (206) 262-9545

annual meeting of the Board of Directors of Goldtech to vote upon or otherwise approve of the issuance of 1,000,000 shares of common stock to Envyr, or (ii) provided any written (or other) consent in lieu of any meeting of the Board of Directors of Goldtech approving of the issuance of 1,000,000 shares of common stock of Goldtech to Envyr. *See Furusho Dec.*, p. 4; *Puzzo Dec.* Exhibit I, p. 96. No valid Board of Directors meeting was held where the issuance of 1,000,000 shares of common stock of Goldtech to Envyr was approved.  Plaintiff did not receive notice that Envyr was issued 1,000,000 shares of Goldtech common stock until the action was disclosed in May 3, 2005 10-KSB.

### 3.    The issuance of 2,200,000 shares of common stock to Tracy Kroeker

On October 15, 2004, Goldtech issued 2,200,000 shares of common stock to Kroeker for no consideration in violation of Nev. Rev. Stat. 78.211(1) (2005).  The shares issued to Kroeker were never duly authorized nor validly issued because Furusho, a duly appointed and incumbent director of Goldtech, never (i) received any notice of a special or annual meeting of the Board of Directors of Goldtech to vote upon or otherwise approve of the issuance of 2,200,000 shares of common stock of Goldtech to Kroeker, or (ii) provided any written (or other) consent in lieu of any meeting of the Board of Directors of Goldtech approving of the issuance of 2,200,000 shares of common stock of Goldtech to Kroeker. *See Furusho Dec.*, ¶3; *Puzzo Dec.* Exhibit I, p. 96. No valid Board of Directors meeting was held where the issuance of 2,200,000 shares of common stock of Goldtech to Kroeker was approved.  Plaintiff did not receive notice that Kroeker was issued 2,200,000 shares of Goldtech common stock until the action was disclosed in May 3, 2005 10-KSB.

### 4.    The issuance of 5,633,000 shares of common stock to Tracy Kroeker

On November 22, 2004, Goldtech issued 5,633,000 shares of common stock to Kroeker for no consideration in violation of Nev. Rev. Stat. 78.211(1) (2005) as evidenced in Item 3 of Schedule 13D filed by Kroeker on May 5, 2005. *See Puzzo Dec.*, Exhibit K, p. 112.  Further, the shares issued to Kroeker were never duly authorized nor validly issued because Furusho, a duly

MOTION FOR LEAVE TO AMEND COMPLAINT - 10 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

appointed and incumbent director of Goldtech, never (i) received any notice of a special or

annual meeting of the Board of Directors of Goldtech to vote upon or otherwise approve of the

issuance of 5,633,000 shares of common stock of Goldtech to Kroeker, or (ii) provided any

written (or other) consent in lieu of any meeting of the Board of Directors of Goldtech approving

of the issuance of 5,633,000 shares of common stock of Goldtech to Kroeker. *See Furusho Dec.*,

¶7; *Puzzo Dec.* Exhibit I, p. 96.  No valid Board of Directors meeting was held where the

issuance of 5,633,000 shares of common stock of Goldtech to Kroeker was approved.  Plaintiff

did not receive notice that Kroeker was issued 5,633,000 shares of Goldtech common stock until

the action was discovered in the stock transfer records provided by OTC Stock Transfer, Inc. to

Plaintiffs on or about May 6, 2005.

### 5.    The issuance of 2,000,000 shares to 1132284 Alberta Ltd.

On January 24, 2005, Goldtech issued 2,000,000 shares of common stock to 1132284

Alberta Ltd. for no consideration as evidenced in Item 3 of the Schedule 13D filed by 1132284

Alberta Ltd. on May 5, 2005. *See Puzzo Dec.*, Exhibit L, p. 116. Further, the 13D establishes

that Kroeker is the beneficial owner of the shares issued to 1132284 Alberta Ltd.  *See Puzzo Dec.*

Exhibit L at p. 115.  The shares issued to 1132284 Alberta Ltd. were never duly authorized nor

validly issued because Furusho, a duly appointed and incumbent director of Goldtech, never (i)

received any notice of a special or annual meeting of the Board of Directors of Goldtech to vote

upon or otherwise approve of the issuance of 2,000,000 shares of common stock of Goldtech to

1132284 Alberta Ltd., or (ii) provided any written (or other) consent in lieu of any meeting of the

Board of Directors of Goldtech approving of the issuance of 2,000,000 shares of common stock

of Goldtech to 1132284 Alberta Ltd. *See Furusho Dec.*, ¶6; *Puzzo Dec.* Exhibit I, p. 96.  No

valid Board of Directors meeting was held where the issuance of 2,000,000 shares of common

stock of Goldtech to Kroeker was approved.  Plaintiff did not receive notice that 1132284

Alberta Ltd. was issued 2,000,000 shares of Goldtech common stock until the action was

MOTION FOR LEAVE TO AMEND COMPLAINT - 11 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

discovered in the stock transfer records provided by OTC Stock Transfer, Inc. to Plaintiffs on or about May 6, 2005.

### 6.    The cancellation of 11,541,400 shares of common stock

On June 22, 2005, Goldtech filed a Form 8-K with the SEC stating that "it has completed the cancellation of 11,541,400 shares. This action effectively reduces the company's outstanding shares from more than 19 million to 7,628,841. Goldtech had previously cancelled 11.11 million shares that were issued in 2003 to be exchanged in consideration for three mining properties in British Columbia." *See Puzzo Dec.*, Exhibit H at p. 87.   On June 23, 2005 Goldtech issued a press release stating, in principal part: "Goldtech Mining Corporation (OTCBB:GMNC - News) announced today that it has completed the cancellation of 11,541,400 shares of the company's common stock (or approximately 83% of the 13,895,991 validly issued and duly authorized shares of common stock of Goldltech on such date), reducing its outstanding shares from more than 19 million to 7,628,841. Goldtech had previously cancelled 11.11 million shares issued in 2003 to be exchanged in consideration for three mining properties in British Columbia." *See Puzzo Dec*, Exhibit M, p. 119-125.   The cancellation of shares is invalid because Furusho, a duly appointed and incumbent director of Goldtech, never (i) received any notice of a special or annual meeting of the Board of Directors of Goldtech to vote upon or otherwise approve of the cancellation of the 11,541,400 shares, or (ii) provided any written (or other) consent in lieu of any meeting of the Board of Directors of Goldtech approving of cancellation of the 11,541,400 shares. *See Furusho Dec.*, ¶9; *Puzzo Dec.* Exhibit I, p. 96.   As such, the Board of Directors of Goldtech never approved of the cancellation of the validly issued and duly authorized 11,541,400 shares of common stock of Goldtech and further has never disclosed such cancellations in any filing with the Commission. Further, the cancellation of the 11,541,400

MOTION FOR LEAVE TO AMEND COMPLAINT - 12 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

shares by Defendant-Directors are a clearly an attempt to obtain control of the Goldtech and

clearly constitutes a breach of duty of loyalty.  Plaintiffs did not become aware of the

unauthorized cancellation of the validly issued and duly authorized 11,541,400 shares until June

23, 2005.

> **7.     Goldtech does not have a stock transfer agent registered with the SEC
> pursuant to Section 17A(c) of the Securities Exchange Act of 1934, as
> amended.**

On or about September 13, 2005, OTC Stock Transfer, Inc. ("OTC Stock Transfer") of

Salt Lake City, Utah began acting as transfer agent for Goldtech.  On or about April 22, 2005,

OTC Stock Transfer resigned as transfer agent for Goldtech, and after such resignation

transferred all stock transfer records and documents to Kroeker. See Puzzo Dec., Exhibit N,

p.127-128. Goldtech is believed to be acting as its own transfer agent under the direction of

Kroeker in violation of Section 17A(c) Securities Exchange Act of 1934, as amended (the

"Exchange Act").  Section 17A(c) of the Exchange Act states requires that,

> [e]xcept as otherwise provided in this section, it shall be unlawful for any
> transfer agent, unless registered in accordance with this section, directly or
> indirectly, to make use of the mails or any means or instrumentality of interstate
> commerce to perform the function of a transfer agent with respect to any security
> registered under Section 12 of this title or which would be required to be registered
> except for the exemption from registration provided by subsection (g)(2)(B) or
> (g)(2)(G) of that section...

Securities Exchange Act of 1934, as amended, 15 U.S.C. §78q-1(c) (2005).  Upon information

and belief, neither Goldtech nor Kroeker is a registered transfer agent under the Section 17A(c)

Exchange Act.  Moreover, the appointment of Goldtech as its own transfer agent is invalid

because Furusho, a duly appointed and incumbent director of Goldtech, never (i) received any

notice of a special or annual meeting of the Board of Directors of Goldtech to vote upon or

otherwise approve the appointment of Kroeker or Goldltech as transfer agent for Goldtech, or (ii)

MOTION FOR LEAVE TO AMEND COMPLAINT - 13 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

provided any written (or other) consent in lieu of any meeting of the Board of Directors of Goldtech approving approve the appointment of Kroeker or Goldltech as transfer agent for Goldtech. *See Furusho Dec.*, ¶10; *Puzzo Dec.* Exhibit I, p. 96.   Therefore, the Board of Directors of Goldtech never approved the appointment of Kroeker or Goldtech as transfer agent for Goldtech and the directors of Goldtech did not unanimously consent in lieu of any meeting of the Board of Directors to approve the appointment of Kroeker or Goldltech as transfer agent for Goldtech.

### C.  The interests of fairness and judicial efficiency and economy favor granting leave to amend the complaint

Defendant-Directors failed to disclose the unauthorized sale of Envyr until May 3, 2005, approximately 7 months after the transaction, in direct violation of the four (4) day reporting requirements of Form 8-K. Defendant-Directors further violate Federal securities laws by filing the Annual Report on Form 10-KSB, over a month late under the rules governing Form 10-KSB, If the Court denied Plaintiffs motion, the Defendant-Directors would benefit from their violation of Federal securities laws.  Further, it would be manifestly unjust to force Plaintiffs to file a new complaint and re-litigate issues which have already been decided by this court.  Finally, judicial efficiency weighs heavily in favor of the granting of this motion because the parties to the cause of action are the same, the Court is already familiar with the factual background underlying this case and has already dispensed with procedural issues which a new trial court would have to review and consider de novo.  Plaintiff has attached for the Courts review as Exhibit O, p. 130-184, to the Declaration of Thomas E. Puzzo in Support of the Motion for Leave to Amend the Complaint, a copy of the proposed amended complaint.

MOTION FOR LEAVE TO AMEND COMPLAINT - 14 -
CIVIL CASE NO. CV4-2130L

The Otto Law Group, PLLC
900 Fourth Avenue, Suite 3140
Seattle, Washington 98164
(206) 262-9545

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests leave to file an amended supplemental complaint in this proceeding that would set forth the new causes of action, based on the most recent illicit actions taken by defendants.

DATED: June _30_, 2005

_Thomas E. Puzzo_

Thomas E. Puzzo, WSBA # 27886
900 Fourth Ave., Suite 3140
Seattle, WA 98164
Tel: (206) 262-9545
Fax: (206) 262-9513
E-mail: tpuzzo@ottolaw.com
Attorneys for Plaintiff

MOTION FOR LEAVE TO AMEND COMPLAINT - 15 -
CIVIL CASE NO. CV4-2130L