1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

10
JAMES STEWART, SUE PEARCE, JOSEPH
VIZZARD, WILIE JONES, TOLAN FURUSHO,
11
and KEITH ROBERTSON, derivatively on behalf
of Goldtech Mining Corporation, a Nevada
12
Corporation

13
        Plaintiffs,

14
       vs.

15
TRACY KROEKER, RALPH JORDAN, JACK
LASKIN, NANCY EGAN RICHARD SMITH,
16
and SERGE BOURGOIN,

17
        Defendants.

Case No.  CV04-2130L

ORDER GRANTING  DEFENDANTS'
SECOND MOTION FOR SUMMARY
JUDGMENT

18

19
      This matter comes before the Court on "Tracy Kroeker, Jack Laskin, Ralph Jordan

20
and Nancy Egan's Ssecond [sic] Motion for Summary Judgment."  Dkt. # 109.  Summary

21
judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving

22
party, there is no genuine issue of material fact which would preclude the entry of judgment as a

23
matter of law.  The party seeking summary dismissal of the case "bears the initial responsibility

24
of informing the district court of the basis for its motion, and identifying those portions of 'the

25
pleadings, depositions, answers to interrogatories, and admissions on file, together with the

26
affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

27
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the

28
ORDER GRANTING DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT- 1

1  moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

2  fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp.,

3  477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the non-moving

4  party's position is not sufficient," however, and factual disputes whose resolution would not

5  affect the outcome of the suit are irrelevant to the consideration of a motion for summary

6  judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001);

7  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In other words, "summary

8  judgment should be granted where the nonmoving party fails to offer evidence from which a

9  reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68

10  F.3d 1216, 1221 (9th Cir. 1995).

11            This is a stockholder derivative action brought by stockholders of Goldtech

12  Mining Corporation on behalf of the corporation against certain directors for alleged violations

13  of the their duties of care and loyalty.[1]  In support of their many allegations of misconduct and

14  self-dealing against the director defendants, plaintiffs have provided very little actual evidence

15  and almost no legal authority establishing the various duties they claim were breached.  At this

16  stage of the litigation, plaintiffs cannot rely on the mere allegations of their complaint or the

17  unsupported assertions in their memorandum: plaintiffs must produce evidence of specific facts

18  showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  Taking the evidence

19  presented in the light most favorable to plaintiffs, the Court finds as follows:

20            (1)  All parties agree that Nevada law governs this case.  Because this action was

21  commenced on October 14, 2004, plaintiffs are required to show not only that defendants'

22  actions or omissions constituted a breach of their fiduciary duties, but also that the "breach of

23  those duties involved intentional misconduct, fraud or a knowing violation of law."  NRS

24

25

---

26        [1] Plaintiffs' conversion claim against the director defendants was dismissed on December 19,
27  2005.  Dkt. # 113.

28  ORDER GRANTING DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT- 2

1 § 78.138(7)(b).[2]

2 (2)  In their Fifth and Sixth Claims against the director defendants, plaintiffs allege

3 that defendants breached their duty of care to the corporation by issuing 1,000,000 shares of

4 common stock to Envyr Corporation, 5,633,000 shares to defendant Kroeker, and 2,000,000

5 shares to 1132284 Alberta Ltd. without the approval of the Board of Directors.  Plaintiffs argue

6 that the defendant directors (a) had no authority to issue stock at any point after September 13,

7 2004, because plaintiff Tolan Furusho remained a director of Goldtech and was not given proper

8 notice of subsequent Board meetings, (b) failed to obtain consideration in exchange for the

9 shares, and/or (c) obtained insufficient consideration for the shares.

10 (a)  Plaintiffs have not come forward with evidence sufficient to raise a

11 genuine issue of fact regarding their allegations regarding a lack of notice regarding the

12 September 20th special meeting of the Board of Directors.  Pursuant to Goldtech's bylaws, such

13 notice is to be given in writing not less than three business days before the meeting.  Although

14 Furusho states in his declaration that he "did not receive any notice of the September 20, 2004

15 meeting either written or verbal" (Decl. of Tolan Furusho at ¶ 6 (Dkt. # 115)), the evidence in

16

17 [2]  NRS 78.138(7) states in its entirety:

18
19 Except as otherwise provided in NRS 35.230, 90.660, 91.250, 454.200, 454.270, 668.045
and 694A.030, or unless the articles of incorporation or an amendment thereto, in each

20 case filed on or after October 1, 2003, provide for greater individual liability, a director or
officer is not individually liable to the corporation or its stockholders or creditors for any

21 damages as a result of any act or failure to at in his capacity as a director or officer unless
it is proven that:

22
23 (a) His act or failure to act constituted a breach of his fiduciary duties as a director or
officer; and

24
25 (b) His breach of those duties involved intentional misconduct, fraud or a knowing
violation of law.

26 Plaintiffs have not argued that the company's articles of incorporation or any of the identified statutes
27 expand the scope of an officer or director's liability beyond that provided in NRS 78.138(7).

ORDER GRANTING DEFENDANTS' SECOND
28 MOTION FOR SUMMARY JUDGMENT- 3

the record refutes this testimony.  The facsimile reports submitted by defendants show that Furusho was twice advised in writing on September 14, 2004, that a special meeting of the Board of Directors would be held the next week.  Decl. of Ralph Jordan at ¶ 5, Ex. D (Dkt. # 118).  That meeting began on September 20, 2004, and was finally adjourned on September 21, 2004.  Decl. of Ralph Jordan at Ex. B (Dkt. # 110).  Contrary to plaintiffs' suggestion, there is no indication in the corporate bylaws that a separate notice would be necessary (or feasible) for the second day of a special meeting and plaintiffs have offered no case law or evidence that would impose such an obligation on defendants.

Plaintiffs also allege that defendants' attempts to remove Furusho from his director position at the September 20th meeting were ineffective because the corporate bylaws state that directors may be removed by "[s]tockholders holding 2/3 of the outstanding shares entitled to vote at an election of directors."  Decl. of Tolan Furusho at Ex. A (Dkt. # 115).  At the Board meeting on September 20, 2004, the Board resolved that:

> whereas Tolan S. Furusho and Tracy Kroeker were appointed to the Board of Directors for a specific purpose, namely the acquisition of the Silver Cup, Mets, and Tofino properties; and, whereas that special purpose no longer exists; and, whereas their appointment to the Board was by the Board, not the shareholders; the Board hereby terminates their appointment to the Board and declares that Tolan S. Furusho and Tracy Kroeker are no longer Directors of the Corporation.

Decl. of Ralph Jordan at Ex. B (Dkt. # 118).  Defendants utilized NRS 78.335(7), which authorizes the removal of "specified circumstance" directors by the group of shareholders which appointed him or her, to remove Furusho and Kroeker from the Board.  NRS 78.335 has not been interpreted by the courts of Nevada and, although there are some points on which defendants' interpretation of the statute could be challenged, their belief that NRS 78.335(7) was applicable to the situation before them was both reasonable and consistent with the advice of counsel.

Even if there were some doubt regarding the validity of the notice provided to Furusho and/or the procedures used to remove him from the Board of Directors, there is no

1  evidence from which a reasonable jury could infer that such procedural failures "involved

2  intentional misconduct, fraud or a knowing violation of law." NRS 78.138(7)(b). The record

3  shows that defendants made multiple efforts to ensure Furusho's participation in the September

4  20th Board meeting, that they provided (or at the very least believed they had provided) written

5  notice via facsimile of the meeting, and that they did not intentionally shirk the notification

6  requirements of the bylaws. Similarly, defendants' decision, after consultation with counsel, to

7  remove Furusho and Kroeker from the Board of Directors pursuant to NRS 78.335 was

8  reasonable even if the courts of Nevada some day interpret that provision more narrowly than

9  defendants did in 2004. At most the evidence in the record could support a finding that

10  defendants made a mistake in relying on NRS 78.335 and/or in assuming that Furusho received

11  the two faxes sent by Jordan. There is no evidence of any intentional misconduct or fraud with

12  regards to these actions or the convening of Board of Directors' meetings in Furusho's absence

13  after September 13, 2004. To the extent plaintiffs claim that the corporation was injured and

14  defendants' should be held liable for procedural failures regarding notice of Board meetings and

15  the removal of Furusho as a director, their claims fail as a matter of law.

16        (b) Plaintiffs argue that the issuance of 1,000,000 shares to Envyr

17  Corporation on September 21, 2004, was without consideration because Envyr failed to identify

18  any consideration when it completed and filed Schedule 13D with the Securities and Exchange

19  Commission on May 5, 2005. In the first place, representations made on behalf of Envyr more

20  than seven months after the issuance of stock neither bind defendants nor disprove the existence

21  of consideration at the time of the transaction. Second, defendants have produced evidence that

22  Envyr did, in fact, provide significant services in exchange for the 1,000,000 shares. Finally, it

23  is not clear how Envyr was supposed to respond to item 3 of Schedule 13D where the shares

24  were being accepted as payment for services already rendered. Item 3 asks for information

25  regarding "the source and the amount of funds or other consideration used or to be used in

26  making the purchases . . . " and, when read in its entirety, is clearly intended to find out whether

27

28  ORDER GRANTING DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT- 5

1   the securities are being purchased with borrowed funds or funds otherwise belonging to an

2   undisclosed third party.  Envyr was not actually purchasing shares of Goldtech Corporation,

3   there was no source or amount of funds used in making the "purchases," and there was no

4   borrowed consideration or loans to be disclosed.  Plaintiffs have not shown, either by

5   authoritative interpretation of Item 3 or expert evidence, that Envyr's response of "N/A" was

6   inaccurate.  While an argument could be made that a more complete disclosure of the nature of

7   the exchange was appropriate, the mere fact that Schedule 13D states "N/A" in response to item

8   3 does not raise a genuine issue for trial regarding the existence of consideration.

9           Plaintiffs maintain that the issuance of 5,633,000 shares to defendant Kroeker on

10  November 22, 2004, was also without consideration.  According to the Board Meeting Minutes,

11  however, those shares were issued as part of a housekeeping exchange: defendant Kroeker had

12  come into possession of a large number of stock certificates through various sources, all of

13  which were cancelled and replaced by a single certificate in her name.  Decl. of Ralph Jordan at

14  Ex. C (Dkt. # 110).  The amount of outstanding shares remained unchanged and the

15  consideration for the new stock certificate was the surrender of the old certificates.  Once again,

16  the applicability of item 3 of Schedule 13D is unclear in these circumstances and plaintiffs have

17  not raised a genuine issue of fact regarding the existence of consideration for this transaction.

18          Although plaintiffs assert that the issuance of 2,000,000 shares to 1132284 Alberta

19  Ltd. on January 24, 2005, "fails for lack of consideration" (Opposition at 13), no argument or

20  evidence is offered in support of that assertion.[3]  The Board Meeting Minutes show that these

21  shares were issued as payment for services rendered by Ronald Shaver, the newest member of

22  the Board of Directors (Decl. of Ralph Jordan at Ex. E (Dkt. # 110)): plaintiffs have not raised a

23  genuine issue of material fact on this issue.

24          (c) Having failed to raise a genuine issue of fact regarding the existence of

25

26      [3]  It is also worth noting that, at the time these shares were issued, defendants Laskin and Egan
27  had resigned from the Board of Directors and could not be held responsible for this issuance.

28  ORDER GRANTING DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT- 6

consideration to support the issuances of shares, plaintiffs allege that the consideration received by Goldtech Corporation in exchange for those shares was inadequate. Pursuant to NRS 78.211, however, "[t]he judgment of the board of directors as to the consideration received for the shares issued is conclusive in the absence of actual fraud in the transaction." Plaintiffs' attempt to establish fraud, such as it is, rests solely on their allegations that defendant Jordan controls Envyr, that defendant Kroeker controls 1132284 Alberta Ltd., and that these transfers were for the purpose of enriching Jordan and Kroeker. Plaintiffs' allegations of control are unsupported and, even if proven, do not give rise to an inference of fraud that would overcome the conclusive determination of the Board under NRS 78.211. The evidence in the record shows that defendant Jordan and his wife jointly own 48% of the outstanding shares of Envyr (the other two employees hold 48% and 4%, respectively), that Jordan is president and a director of Envyr (another employee is Chairman of the Board), and that Jordan runs the day-to-day operations of the company. Decl. of Tracy M. Shier at Ex. O (Dkt. # 116). There is no evidence that Jordan has unfettered control of Envyr (he is not a majority shareholder and does not control the Board of Directors). Even if "control" is assumed, that does not change the fact that Envyr provided services in exchange for the 1,000,000 shares of Goldtech and that the three disinterested directors, Kroeker, Egan, and Laskin, approved the transaction.

Plaintiffs' evidence of Kroeker's control over 1132284 Alberta Ltd. is even weaker: all the record shows is that as of May 2005 (almost four months after the stock was issued as payment for services rendered by Ronald Shaver) Kroeker was the sole director of the company. Decl. of Tracy M. Shier at Ex. M (Dkt. # 116). Plaintiffs have provided no information regarding 1132284 Alberta Ltd.'s employee or management structure and it is impossible to evaluate Kroeker's level of influence with the limited information available. Nor have plaintiffs attempted to explain why Ronald Shaver, who was also a director of Goldtech, would agree to accept payment for services rendered in a form that allegedly benefited only Kroeker or why the other directors would approve such a transaction.

ORDER GRANTING DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT- 7

1      Plaintiffs' claims of self-dealing (and by implication fraud) are based on nothing

2  more than overlapping corporate relationships colored with rank speculation regarding the

3  motives of Goldtech's directors.  The shares issued to Envyr, Kroeker, and 1132284 Alberta Ltd.

4  were granted in exchange for services rendered and/or cancelled stock certificates.  The

5  overlapping directorates revealed by the record do not raise an inference of fraud that would

6  bring this case within the exception to NRS 78.211.  Goldtech's Board of Directors, including

7  those directors who had no relationship to Envyr, Kroeker, or 1132284 Alberta Ltd., approved

8  the transactions and were under no duty to undertake the sort of detailed valuation exercises

9  plaintiffs would require.  To the extent plaintiffs' Fifth and Sixth Claims are based on the

10  insufficiency of consideration, they fail as a matter of law.

11      (3) Plaintiffs' Seventh Claim asserts that defendants cancelled shares of Goldtech

12  stock "without valid approval of the Board of Directors and without consideration" in violation

13  of their duty of care.  As noted above, plaintiffs have failed to show that the director defendants

14  breached their fiduciary duties by conducting Board meetings after September 13, 2004, or that

15  any such breaches involved intentional misconduct, fraud, or knowing violations of the law.

16  Nor have plaintiffs explained their lack of consideration claim.  If plaintiffs are asserting that

17  Goldtech should have received consideration for having cancelled outstanding shares, their

18  position is nonsensical.  If, on the other hand, plaintiffs are asserting that the individuals' whose

19  shares were cancelled should have received consideration, the failure to pay consideration to a

20  third party does not give rise to a loss or injury on Goldtech's part and cannot be remedied

21  through this derivative suit.

22      (4) Plaintiffs have alleged that the director defendants breached their duty of

23  loyalty to Goldtech by issuing shares to Envyr, defendant Kroeker, and 1132284 Alberta Ltd.

24  without consideration.  First Amended Verified Stockholders' Derivative Complaint at ¶ 174. As

25  discussed above, plaintiffs have failed to raise a genuine issue of fact regarding the existence of

26  consideration for these three transactions.  Defendants have produced evidence showing that the

27

28  ORDER GRANTING DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT- 8

1   stock was issued in exchange for services rendered by Envyr's employees, outstanding stock

2   certificates relinquished by Kroeker, and services rendered by Ronald Shaver.  Plaintiffs'

3   various allegations regarding the degree to which defendant Jordan controls Envyr and defendant

4   Kroeker controls 1132284 Alberta Ltd. do not change the fact that consideration was provided.

5   Plaintiffs' innuendo and speculation regarding the "real" motive behind these transactions does

6   not stand up against defendants' evidence that consideration was, in fact, provided and does not

7   give rise to a triable issue of fact.

8          (5) Plaintiffs' Ninth Claim is that the director defendants cancelled outstanding

9   shares of Goldtech without consideration and for the purpose of placing Kroeker and/or Kroeker

10  and Jordan in a position to control a majority of the corporation's stock.  Again, plaintiffs make

11  no attempt to explain how or to whom consideration should have been paid in the circumstances

12  presented here.  Nor do plaintiffs show that the cancellation of the 11,540,000 shares originally

13  issued in connection with the failed attempt to acquire mining properties in British Columbia

14  placed either Kroeker or Jordan, individually or together, in control of Goldtech.  Following the

15  cancellation, defendant Jordan owned only .06% of Goldtech stock while Kroeker owned 29%

16  of the outstanding stock.  Plaintiffs' allegations of control rely on their unsupported assumption

17  that Kroeker controls 1132284 Alberta Ltd. and its 2,000,000 shares.  As discussed above,

18  however, plaintiffs have shown nothing more than that Kroeker is the sole director of the

19  company: whether or not she has the ability to control the actions and assets of that entity is

20  unknown.

21          Even if the Court were to assume that the cancellation of the 11,540,000 shares

22  gave Kroeker a majority position in Goldtech, defendants could not be held liable for damages

23  arising from that decision unless they acted with "intentional misconduct, fraud, or a knowing

24  violation of law."  NRS 78.138.  Both parties agree that the cancelled shares had been issued in

25  connection with the promised acquisition of mining properties in British Columbia.  Plaintiffs

26  have not even attempted to show that the cancellation of those shares was a breach of duty: once

27  it became clear to the Board that the properties had not been and would not be acquired by

28  ORDER GRANTING DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT- 9

1   Goldtech, it would have arguably been a breach of duty not to cancel the shares that had been

2   given in exchange for those properties.  Having failed to provide any evidence from which one

3   could infer that the cancellation was improper, plaintiffs' self-dealing allegations rely solely on

4   the relative size of Kroeker's holdings.  Plaintiffs offer no evidence that any of the defendants,

5   but in particular Jordan, Laskin, or Egan, was motivated by a desire to make Kroeker the

6   majority shareholder.  In light of their failure to address the valid business reasons for cancelling

7   these shares or to advance a viable theory for why the three minority shareholders would be

8   motivated by a desire to increase Kroeker's power, the mere fact that Kroeker may have had

9   influence over 4,200,000 shares does not give rise to a triable issue of fact.

10          (6) Plaintiffs' Tenth Claim asserts that defendants Kroeker and Jordan breached

11  their duty of care to the corporation by failing to engage a registered transfer agent for Goldtech.

12  Goldtech has filed the required documentation with the Securities and Exchange Commission in

13  order to serve as its own transfer agent.  Although Goldtech may have acted as its own transfer

14  agent for a period of time prior to filing the Form TA-1, defendants took steps to register shortly

15  after plaintiffs raised this allegation.  There is no evidence from which one could infer that the

16  failure to file Form TA-1 involved "intentional misconduct, fraud or knowing violation of law"

17  on the part of Kroeker or Jordan.  NRS 78.138.

18          (7) Although the First Amended Verified Stockholders' Derivative Complaint

19  contains allegations regarding a failure to disclose the issuance of 2,000,000 shares to 1132284

20  Alberta Ltd. (see Amended Complaint at ¶ 111) and a failure on the part of third parties to file

21  timely disclosures regarding stock transfers (see, e.g., Amended Complaint ¶ 116), plaintiffs did

22  not assert a claim based on these procedural omissions.  Had such a claim been asserted, it

23  would fail because (a) defendants cannot be held liable for the acts or omissions of third parties,

24  (b) there is no allegation that the failure(s) to file required forms with the Securities and

25  Exchange Commission involved intentional misconduct on the part of defendants, and/or

26  (c) there is no evidence from which a reasonable factfinder could conclude that defendants

27  knowingly violated SEC regulations.

28  ORDER GRANTING DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT- 10

1    For all of the foregoing reasons, defendants' second motion for summary judgment

2 is GRANTED.  All of plaintiffs' claims against the director defendants have now been dismissed

3 with the exception of the breach of duty of care claim against defendant Kroeker regarding the

4 issuance of S-8 shares to Robert Smith.

5

6    DATED this 23rd day of January, 2006.

7

8                                          _MNr S Casnik_

9                                          Robert S. Lasnik
                                           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER GRANTING DEFENDANTS' SECOND
    MOTION FOR SUMMARY JUDGMENT- 11